In the Matter of the Claim of SIGRID LOFSTEDT, Respondent, against UNITED STATES GYPSUM COMPANY, Appellant.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 13, 1930.

*Clarence B. Tippett*, for the appellant.

*Hamilton Ward, Attorney-General [E. C. Aiken, Assistant Attorney-General*, of counsel], for the respondents.

HINMAN, Acting P. J. John Lofstedt sustained a fracture of his left leg above the knee in the course of his employment on June 23, 1925. Reduction was promptly attempted, but X-rays taken in July, 1925, showed the fracture in malposition with overriding. A bone plate was applied on July twentieth and the leg was placed in plaster cast. When this plate was removed on August twenty-second there was apparently firm union but there was a slight displacement still. The result was not entirely satisfactory and about two months after his discharge from the hospital on August 30, 1925, he complained of bowing of the leg. He was again X-rayed, which showed the fragments had slipped. He then refused a further operation to correct the condition which the employer offered to him and in November, 1926, upon undisputed medical examination determining a functional loss of use of the leg at fifty per cent, he was given a schedule award on that basis, which was finally paid in full in March, 1928, totalling $2,880. Lofstedt worked from October 16, 1925, to August 11, 1928. He worked at reduced earnings as a watchman from October 16, 1925, to January 31, 1926, and then returned to his regular work which he continued until August, 1928, during which time he earned in excess of his previous regular wages. In August, 1928, he decided that he wanted the leg corrected by the further operation of a bone graft which he had previously refused. On the previous occasion or

occasions when it had been offered to him privately by the employer he had evidently thought he could get along without it. No such offer of a further operation had been made or passed upon at any compensation hearing and it cannot be said that he had unreasonably refused it. The Board has so found. He did get along for three years at his regular work and at increased wages. He then changed his mind. The referee has said that what caused him to change cannot now be determined. It was conceded on the record that the employer did not authorize a further operation in 1928 and that there was no change of condition in 1928 from the functional loss of fifty per cent for which he had received a schedule award and been paid in full. He had a bad deformity which weakened his leg and he went to the hospital in August, 1928, to have a bone graft inserted at the seat of the fracture to correct the deformity and to strengthen the leg. The operation was recommended by several physicians who thought it would be successful. The leg refused to heal following this corrective operation. It was amputated on October 12, 1928, in an endeavor to save his life, but he died October 13, 1928, from shock. The State Industrial Board has found that " as a result of said fracture, there was some considerable deformity to said leg and deceased was thereafterwards admitted to the hospital on August 21, 1928, wherein he was further operated upon in order to give him a better leg " and that his death as a result of such operation was the natural and unavoidable result of his accidental injury. An award has been made for death benefits to his widow and minor child.

The operation by which the employee met his death was in consequence of the accident and the previous unsuccessful operation. It was, however, an operation not sanctioned at that time by the employer and self-insurer. It was a voluntary act on the part of the employee alone to remedy a defect for which he had received full compensation. The test of whether death resulted from the injury and was chargeable to the employer within the intendment of the Workmen's Compensation Law or whether it was proximately chargeable to the employee alone, is the vital question. At the time of the operation in question he was suffering no incapacity for which the employer owed any further legal liability. There was no increase of functional loss of use of the leg, actual or threatened, nor was there any disease or infection, actual or threatened, to be overcome by the operation. He had accepted the award for permanent injury in lieu of surgical procedure and had been paid in full. The leg did not preclude him from continuance of his usual occupation at even larger wages than formerly. The Workmen's Compensation Law has been liberally construed to carry

out its benign purposes and we do not overlook the fact that the death claims of a widow and child are new claims, distinct from that of the disability claim of the employee; but the law does not contemplate that, when a claimant has received compensation in full for an injured and defective member such as a leg, he may voluntarily and without authorization of his employer have that defect removed in whole or in part by operation and have the cost of the operation and the consequences of death therefrom charged to his employer as a valid compensation claim for his benefit or that of his dependents. The train of events between the accident and death is broken by a new and independent cause, namely, his own unauthorized and unjustified act in seeking to eliminate the defect for which he had been compensated in full. His own act must be deemed the proximate cause of his death in the circumstances disclosed here. A different question would arise if the operation had been for an increase of disability for which he might have presented a further claim.

The award should be reversed and the claims dismissed, with costs against the State Industrial Board.

DAVIS, WHITMYER and HILL, JJ., concur; HASBROUCK, J., dissents.

Award reversed and claims dismissed, with costs against the State Industrial Board.